DEERE, WELLS & COMPANY V. PETER HEINTZ.

FILED NOVEMBER 18, 1897.    No. 7571.

Instructions Foreign to Issues: SALES: REVIEW. An instruction which invited the attention of the jury to the assumed existence of a warranty in the sale of personal property not pleaded in the petition, and as to which no breach was alleged, *held* prejudicially erroneous.

ERROR from the district court of Hall county. Tried
below before THOMPSON, J. *Reversed.*

*M. T. Garlow,* for plaintiff in error.

*James H. Woolley, contra.*

RYAN, C.

In his amended petition in the district court of Hall
county Peter Heintz alleged that about January 13, 1892,
he, as agent for Adam Windolph, had purchased a stock
of plows from Deere, Wells & Co. for the spring trade of
1892, and that in said purchase were included two "New
Deal Gang Plows," for which said Heintz as agent of
Windolph paid the sum of $89.50. It was further averred
in the petition that Deere, Wells & Co. represented in a
written contract, upon which reliance was placed by Win-
dolph in purchasing as aforesaid, that "All plows sold
under said contract were suitable for spring plowing and
the spring trade and perfectly fit and suitable for the pur-
poses the said tools were sold, viz., plowing; and under
said contract defendant agreed to be responsible for the
performance and work of all said plows sold and espe-
cially the two in controversy in this case, excepting that
the manufacturer shall not be held responsible for the
performance of a plow after it has been heated or radi-
cally changed by anyone away from the factory." It was
furthermore alleged that, "Said plows were not heated or
radically changed in any manner whatever; that plaintiff
gave both plows a fair and impartial trial in different
kinds and conditions of soil during the spring and summer
of 1892, and that said plows were worthless for the pur-
pose sold, *i. e.,* plowing, or for any other or different pur-
pose, and that they refused to work and did not work even
in the hands of experts." The above quoted averments
were followed by allegations of a return of the said plows
to the defendant by direction of its general agent, an as-
signment by Windolph of his right of action to plaintiff

and of a demand of payment of the claim sued on and the continued refusal of defendant to make such payment. There was also a prayer for judgment in the sum of $89.50, with interest from September 12, 1892,—the date of the alleged assignment of the claim to Heintz. By the defendant's answer the averments of the petition were denied except that there were admissions of the refusal to pay and of the existence of the exception which exempted the defendant from liability if the plows were heated or radically changed. There were affirmative matters pleaded in the answer, but in the view we take of the case it is not necessary at this time that these should be considered. There was a verdict for the amount claimed by the plaintiff, on which verdict judgment was duly rendered, and for the reversal of this judgment Deere, Wells & Co. prosecute these error proceedings to this court.

From the description of the cause of action set out in the petition which has been already given it is clear that the warranty pleaded was that the two plows were suitable for spring trade, and were perfectly fit for the purpose for which they were sold, that is, for plowing, and that Deere, Wells & Co. agreed to be responsible for the performance and work of these plows. The breach of the above warranty alleged was that the plows were worthless for plowing and refused to work and did not work even in the hands of experts. Lest there may be a misapprehension of our meaning it is proper to say that we do not consider the averment that these plows were worthless for any other or different purpose than plowing, as at all material, for it is not within the scope of the warranty set out in the petition. As we view it, therefore, the breach of warranty upon which alone plaintiff in the district court was entitled to rely for a recovery was, that the plows would not work, and were worthless for plowing. There was given by the court the following instruction: "No. 10. The jury are instructed that the word 'workmanship' is defined and means that which is effected, made, or pro-

47

duced, manufactured, especially something made by
manual labor; and, if you find from the evidence that the
defendant Deere, Wells & Co. warranted the plows to be
of good workmanship, then in that event, the said plows
were warranted to be properly constructed, made, and
produced, and fit for the purpose sold." Under the aver-
ments of the petition it was not a relevant inquiry as to
whether or not the two plows were of good workmanship;
neither was the right to a recovery in terms predicated
upon an agreement that the plows were properly con-
structed, made, and produced. It was required to make
out the breach of the warranty pleaded to show that the
plows would not work or would not do good plowing, and
it mattered not even though they might be awkward in
design and unsymmetrical in proportion. By this in-
struction the attention of the jury was directed to an in-
quiry which was entirely foreign to the issues presented
by the pleadings, and we cannot but think that in this
misdirection there was prejudicial error. The judgment
of the district court is therefore reversed.

REVERSED AND REMANDED.